ELIZABETH HAYTHORNTHWAITE, on behalf of herself and other stockholders of TRANSPAC CORPORATION, Plaintiffs

v.

TRANSPAC CORPORATION, TOM DRABBLE, DEREK DALE, and JOSE VELGHE, Defendants

High Court of American Samoa
Trial Division

CA No. 13-87

December 7, 1987

110

Before REES, Chief Justice.

Counsel: For Plaintiff, William Reardon
For Defendant, Roy J.D. Hall, Jr.

Opinion and Order on Motion for Preliminary Injunction:

Plaintiff alleges that defendant Drabble, the President and majority shareholder of Transpac, has caused the corporation to engage to its detriment in a series of financial transactions with Drabble himself and with other entities controlled by him.

The Court is keenly aware of the limits of its authority and competence in dealing with charges of the sort that have been made here. Minority shareholders are not entitled to any particular return on their investment, or to any return at all. They are not entitled to manage the corporation or to get the Court to manage it for them, even if the minority shareholders and the Court believe the business judgment of the majority to have been unsound. A minority shareholder is, however, entitled to insist that the managers and majority shareholders observe their fiduciary duty to the corporation. When management engages in acts of self-dealing that are so clearly detrimental to the corporation as to overcome the strong presumption that a court should not interfere with the business judgment of those charged with managing business enterprises --- what is known as "the business judgment rule" --- this fiduciary duty is breached.

It is easy to understand the resentment that someone in the position of Mr. Drabble, who owns the vast majority of the shares in a corporation and who has spent most of his working life in an effort to make it prosper, must feel when his dealings with the corporation are questioned. For reasons that are just as easy to understand, however, such a person may tend to deal with the corporation as though it were an extension of himself rather than an entity to which he owes a fiduciary duty. When there are minority share-

111

holders who object to such dealings, they are impermissible.

At the hearing on plaintiff's motion for a preliminary injunction, she produced evidence of a number of instances in which corporate assets had been used by Mr. Drabble or other entities controlled by him without any apparent benefit to the corporation. The absence of evidence of apparent benefit to the corporation does not necessarily mean that no benefit was derived. It might be possible to characterize some of the transactions to which plaintiff objects as compensation for Mr. Drabble's services to the corporation. Others, such as the use of Transpac computers and of Transpac employees' time in the conduct of non-Transpac enterprises, may have or may not have imposed substantial costs on the corporation. Although the pattern of casual transfers among Drabble-controlled entities that appears from the present record is such that plaintiff will probably be able to prove at trial that some of these transfers should not have occurred or should have been handled differently, with regard to most such items the plaintiff has not proved that she or the corporation will be irreparably injured if no interim relief is granted pending a trial on the merits. Accordingly, plaintiff's request that the Court order a complete audit and the return of any diverted assets prior to trial is denied.

Our finding that no irreparable injury will take place prior to trial, however, is conditioned on the assumption that there will be no substantial transfers of Transpac resources to other Drabble-controlled entities between now and then. Although plaintiff presented evidence that would suggest the likelihood of such transfers, Mr. Drabble assured the Court that none are contemplated. The Court will therefore enjoin any such transfers pending the outcome of this case. The limitation of this order to "substantial" transfers is designed to make it clear that defendants are not required to restructure their operations so as to eliminate the current use by non-Transpac entities of such assets as computer time and administrative work by Transpac employees. Only the direct transfer of funds, or a series of indirect transfers clearly calculated to achieve the effect of a substantial and direct transfer of funds, is prohibited.

112

The principal point of contention between the parties is the development of the "Sadie Thompson building." After plaintiff objected to an earlier arrangement by which Transpac was to develop the building and use it to house some corporate operations, Mr. Drabble and the corporation reached an agreement that Drabble would take over the development of the building and reimburse Transpac for the amounts it had expended. A complicated series of transactions ensued, including a recent decision by the Transpac Board of Directors that Transpac will lease the building from Mr. Drabble "at cost." There is at present no lease document; the term of the lease and the exact amount constituting "cost" remain unspecified. At the hearing on this motion Mr. Drabble testified that no further expenditures by Transpac were contemplated other than "tenant expenses," primarily interior decoration of those areas Transpac intends to lease. The expenditure of Transpac funds for such "tenant expenses" does not violate the preliminary injunction. Substantial expenditures for amounts not customarily charged to commercial tenants would violate the injunction, unless they were made pursuant to a lease approved by the board of directors of Transpac and whose terms were not so unfavorable to the corporation as to violate the business judgment rule.

It would be difficult to underestimate the enthusiasm with which the Court embarks on this venture into the world of retail sales and interior finance. The corporate form of organization has many advantages, but there is very little to be said for a closely held corporation whose shareholders do not like each other. Even the relatively unintrusive inquiry into whether challenged transactions violate the business judgment rule promises to be painful for the defendants without offering any great prospect of substantial profit to the plaintiff. The Court reiterates its · suggestion that the parties negotiate, perhaps by resort to arbitration, a fair price per share. Surely there must be objective factors (other than the near-monopoly power of the majority shareholder and the "nuisance value" of the minority shares) by which such a figure could be calculated. This would allow Mr. Drabble to conduct transactions among the various enterprises he controls without regard to the benefit or detriment to each entity from each transaction, and it would allow Mrs. Haythornthwaite to direct her

113

activities to more productive enterprises than litigation.

It is so ordered.